**SO ORDERED**

**SIGNED this 10 day of February, 2025.**

_____
Pamela W. McAfee
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

JOHN CARR SMITH,

    DEBTOR

CASE NO.
24-00608-5-PWM
CHAPTER 13

### ORDER OVERRULING OBJECTION TO CONFIRMATION

The matter before the court is the chapter 13 Trustee's objection to confirmation of the debtor's amended chapter 13 plan, D.E. 50. A hearing took place in Raleigh, North Carolina on January 16, 2025, at the conclusion of which the court took the matter under advisement. For the reasons that follow, the Trustee's objection is overruled and the plan may be confirmed.

### PROCEDURAL BACKGROUND AND ISSUE BEFORE THE COURT

John Carr Smith filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on February 23, 2024. The IRS holds a general unsecured claim against Mr. Smith in the amount of $92,884.23, as evidenced by its amended proof of claim filed on October 10, 2024, Claim No. 10-3. Mr. Smith's amended chapter 13 plan, filed on November 29, 2024, provides that the amount of $4,645.54 is required to be paid toward the IRS claim based on the non-exempt value of his property. D.E. 49. The Trustee filed his objection on January 9, 2025, asserting that the plan does not satisfy the requirements of 11 U.S.C. § 1325(a)(4) (commonly referred to as the

"liquidation test") because the Trustee calculates $49,924.40 as the amount to be paid toward the general unsecured claim of the IRS.

At issue is what portion of the non-exempt value of Mr. Smith's residence, which he owns with his wife as tenants by the entirety, is subject to the claim of the IRS for purposes of the liquidation test. The Trustee contends that the IRS, as the only creditor that could reach the entireties property, would be entitled to the full value of the property after encumbrances, exemptions, and costs, whereas Mr. Smith contends that the IRS would be entitled to only one-half of that value. The precise question before the court is what amount would be paid to the IRS in a hypothetical liquidation under chapter 7 and, in turn, what amount must be committed to the chapter 13 plan pursuant to § 1325(a)(4).

The Trustee calculates the non-exempt equity in the property as follows: starting with a property value of $336,000 and factoring in liquidation costs of 6% and total liens of $155,383.10, the net value of the property is equal to $160,456.90. This amount, according to the Trustee, is the value of Mr. Smith's interest in the property prior to any claim of exemption. After subtracting the statutory exemption of $70,000 (comprised of the $35,000 homestead exemption that would be available to both Mr. Smith and his non-filing spouse under N.C. Gen. Stat. § 1C-1601(a)(1)), the Trustee contends that there is $90,456.90 in equity above exemptions. To reach the value that would be paid to the IRS in a hypothetical liquidation under chapter 7, the Trustee subtracts from that figure $6,838 in attorney's fees, a priority claim of $18,152.50, and the chapter 7 trustee's fee of $15,542. The Trustee maintains that the remainder, $49,924.40, would be paid to the IRS as the only general unsecured creditor that could reach the tenancy by the entireties property.

Mr. Smith's calculation of non-exempt equity also starts with a property value of $336,000 and factors in liquidation costs and total liens to reach the property's net value,[1] but diverges from the Trustee's calculation by dividing the net value in half, providing Mr. Smith's non-filing spouse with one-half of the value, and leaving Mr. Smith with an interest of $80,557.78. From there, he subtracts his homestead exemption of $35,000, the priority claim of $18,152.50, attorney's fees of $6,838, and the hypothetical chapter 7 trustee's fee of $15,542, leaving $4,645.54 in non-exempt equity to be paid to the general unsecured claim of the IRS.

The Trustee contends that because the property is held by Mr. and Mrs. Smith as tenants by the entirety, Mr. and Mrs. Smith's marital unit jointly holds an interest in the property and Mr. Smith's interest in the property is undivided. The effect of this, according to the Trustee, is that the IRS's claim would be paid from the entire net value of the property, less exemptions, priority claims, and fees in a hypothetical liquidation under chapter 7. By contrast, Mr. Smith asserts that only a one-half interest in the property is subject to the claim of the IRS, citing several persuasive authorities that support his position through their interpretation of other states' entireties laws.

## DISCUSSION

The IRS claim is for unpaid taxes, interest, and penalties owed solely by Mr. Smith, not by Mr. and Mrs. Smith jointly. Generally, creditors of only one spouse cannot attach a lien to property held by the entireties, but the Supreme Court of the United States has recognized an exception with respect to federal tax liens. *United States v. Craft*, 535 U.S. 274, 288 (2002).[2] There, the Court looked first to state law to determine what rights a tenant has in entireties property, and then to

---

[1] There is a slight discrepancy between the parties' calculations as to the total amount of the liens on the property. The Trustee's figure is $155,383.10, while Mr. Smith's is $154,724.44. Thus, Mr. Smith's calculation of the property's net value is slightly higher than that of the Trustee, totaling $161,115.56.

[2] The Fourth Circuit has recently confirmed that the IRS does not need to have actually perfected a lien for tenancy by the entireties property to be administered by a chapter 7 trustee to pay an individual IRS claim. *Morgan v. Bruton*, 99 F.4th 206, 210 (4th Cir. 2024).

3

federal law to determine the consequences of those rights. *Id.* at 278–79 ("State law determines only which sticks are in a person's bundle. Whether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law."); *see also United States v. Rodgers*, 461 U.S. 677, 683 (1983). Ultimately, the *Craft* Court held that property held as tenants by the entirety may be subject to the attachment of federal tax liens, regardless of whether those tax liens are only against one tenant, so long as the debtor-tenant's interest constitutes "rights to property" under applicable state law. *Craft,* 535 U.S. at 283. There is no dispute here as to whether the IRS must be paid based on the liquidation value of the debtor's interest in the property, but instead how to calculate that interest.

The *Craft* Court declined to address the extent of a debtor-tenant's interest in entireties property for purposes of valuing an IRS tax lien. *Id.* at 289 ("We express no view as to the proper valuation of respondent's husband's interest in the entireties property . . . ."). Instead, that interest must be determined with reference to state law. *Popky v. United States*, 419 F.3d 242, 244 (3d Cir. 2005). In response to *Craft*, however, the IRS itself has stated that "[a]s a general rule, the value of the taxpayer's interest in entireties property will be deemed one-half." *See Internal Revenue Manual* (IRM) 5.17.2.5.2.4 (Mar. 5, 2019), https://www.irs.gov/irm/part5/irm_05-017-002.

Courts considering the issue have concluded that where state law recognizes a one-half interest in property held as tenancy by the entireties, an IRS lien may attach to a debtor-tenant's one-half interest, rather than the whole, such that the lien is paid from the sale proceeds of that one-half interest. *Ramsay v. Sanibel & Lancaster Ins., LLC*, No. 2:11CV207, 2016 WL 3360496, at *4 (E.D. Va. June 14, 2016). Under Virginia law, spouses who own property by the entireties equally share a right to use and possession of, and income from, the entire property. The *Ramsay* court reasoned that "if a tenancy by entirety is sold or divided, and such division is not otherwise

4

addressed by law, a Virginia tenant's 'right to property,' held as tenancy by the entirety, is equal to a one-half interest in such property." *Id.* at *3. Because Virginia law recognizes that spouses may have a one-half interest in entireties property in the contexts of use, possession, and income, the *Ramsay* court held that Virginia law allows for limiting an IRS lien to only that interest. *Id.* at *4.

Similarly, the United States Court of Appeals for the Third Circuit considered whether Pennsylvania law allowed an IRS lien to attach only to a debtor-tenant's one-half interest in entireties property, finding that "[v]aluing the interests of tenants by the entireties equally accords with longstanding Pennsylvania common law definitions of tenancies by the entirety." *Popky*, 419 F.3d at 245. Moreover, focusing on the practicalities of property valuation of entireties property, the *Popky* court noted that equal valuation is "far simpler and less speculative" than other valuation methodologies. *Id.*

Applying Michigan law, the United States Court of Appeals for the Sixth Circuit found that because state law entitles spouses holding property as tenants by entirety to equal rents, products, income, or profits derived from the property, spouses had equal interests in entireties property "in every situation contemplated by Michigan law." *United States v. Barr*, 617 F.3d 370, 373 (6th Cir. 2010). That court concluded that a tax foreclosure sale of a home held as tenancy by the entirety entitled each spouse to fifty percent of the proceeds of the sale, reasoning that because the spouses had an equal interest in their home, division according to those interests results in an equal distribution of sale proceeds. *Id.*

Reading these authorities together, the necessary inquiry for determining Mr. Smith's interest in the property is whether North Carolina law allows for recognition of a spouse's one-half interest in property held as tenants by the entirety. While no court has addressed the specific

5

issue under North Carolina law, the North Carolina statutes answer this question swiftly: the statutory language parallels that of the state laws considered in *Ramsay*, *Popky*, and *Barr*. North Carolina law provides that "[s]pouses shall have an equal right to the control, use, possession, and income from property held by them as tenants by the entirety." N.C. Gen. Stat. § 41-58(a). Additionally, "[i]ncome derived from property held by spouses as tenants by the entirety becomes personal property held by the spouses as tenants in common in equal shares." N.C. Gen. Stat. § 41-59(a). Further, a voluntary sale and conveyance of entireties property to a third party terminates a tenancy by the entirety, and "[p]roceeds of the sale, including surplus funds generated from a foreclosure sale, are personal property held by the spouses as tenants in common." N.C. Gen. Stat. § 41-63(1).

In line with Michigan law, North Carolina law entitles a spouse to an equal share of, as well as equal rights in, income derived from entireties property. Indeed, North Carolina takes this distribution a step further by classifying that income as personal property held by each spouse as tenants in common. In light of these authorities, to say that Mr. Smith's interest in entireties property may only be recognized jointly with his wife would run contrary to North Carolina's statutory directives regarding tenancy by the entirety, given that the statutes explicitly authorize a one-half interest in the context of income distribution. In addition, and similar to Virginia law, North Carolina law recognizes that spouses have equal rights to use, possession, and control of entireties property, further supporting the idea that these equal rights between spouses in entireties property, as recognized by state law, translate into equal interests in the value of the property. Accordingly, the court finds that North Carolina law sufficiently supports recognition of Mr. Smith's one-half interest in the property such that an IRS lien would attach to his one-half interest,

rather than the whole, and that is the value to be considered in calculating the liquidation test under § 1325(a)(4).

As further support for the court's conclusion that Mr. Smith is required to dedicate only the value of a one-half interest in the property toward the liquidation test, and as an additional ground for the conclusion reached herein, North Carolina law provides that a sale of entireties property severs the tenancy by the entirety and transforms the interests to tenants in common. Because the liquidation test under § 1325(a)(4) contemplates a hypothetical sale of property, it logically follows that this hypothetical sale would sever Mr. and Mrs. Smith's tenancy by the entirety and that the equal distribution of sale proceeds between the spouses provided for in N.C. Gen. Stat. § 41-63(1) should also be accounted for in the analysis. Finally, the court finds it relevant that although the IRS would stand to benefit from valuing spouses' interests jointly, it has taken the position that a taxpayer's interest in entireties property should be deemed as one-half.

While the court bases its conclusion solely on application of law, the facts of this case also demonstrate that the outcome is a fair one: According to the proffer by Mr. Smith's counsel at the hearing, Mr. Smith incurred the taxes at issue prior to his marriage to Mrs. Smith. She owned the property prior to their marriage, and post-marriage the property was re-deeded to the Smiths as tenants by the entireties. To have the full amount of non-exempt equity in the property subject to Mr. Smith's pre-marriage liability to the IRS would be fundamentally unfair to Mrs. Smith.

## CONCLUSION

Based on the foregoing, the Trustee's objection to confirmation is OVERRULED. For purposes of determining the amount required to be committed to the chapter 13 plan under the liquidation test where a tax liability is owed only by one spouse, the starting value is one-half of

7

the equity in the property over encumbrances. The clerk is directed to enter an order confirming Mr. Smith's amended chapter 13 plan.

**END OF DOCUMENT**